# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>v.<br><br>RAUL VILLAFAN CASTILLO,<br><br>                    Defendant. | Criminal No. 14-205(1) (RHK/JSM)<br>Civil No. 16-1944 (RHK)<br><br>**ORDER** |

---

This matter is before the Court on Defendant's June 10, 2016, Motion to Vacate, Set Aside or Correct Sentence, brought under 28 U.S.C. § 2255.   (Doc. No. 174). Defendant's Motion will be denied for the reasons discussed below.

## PROCEDURAL AND FACTUAL HISTORY

On June 19, 2014, Defendant Raul Villafan Castillo was charged in an Indictment with conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846 (Count 1).  Doc. No. 1.  Paul Applebaum, Esq. represented Defendant, and after undertaking representation he filed a number of pretrial motions on behalf of Defendant. See, e.g. Doc. Nos. 32-42. After the parties addressed each other's initial pre-trial motions, by August 4, 2014, Defendant agreed to plea terms and filed through his counsel a letter withdrawing his motions.  Doc. No. 43.  The matter was set for plea proceedings, to occur on September 5, 2014.  Doc. No. 48.

While scheduled for plea proceedings, Defendant on September 5, 2014, asked for more time to consider the terms offered by the Government, and the matter was

rescheduled for September 12, 2014.  Doc. No. 58.  Defendant balked at the proposed plea terms on this latter date, and the matter was scheduled for trial.  Doc. Nos. 59-60. On October 7, 2014, the grand jury superseded the indictment, to add multiple counts of methamphetamine distribution against Defendant and his co-defendants, in violation of 21 U.S.C. §§ 841(a)(1)(A) (Count 1), 841(b)(1)(B) (Counts 3, 5, 6, 7, 9, 10 and 11) and 841(b)(1)(C) (Counts 2, 4, 8 and 12).  Doc. No. 63.  The parties again engaged in pre-trial motions, including multiple motions filed by Mr. Applebaum on Defendant's behalf. See, e.g., Doc. Nos. 73, 75-83.

After litigating a second wave of pretrial motions, the matter was set for trial, to begin on Monday, February 23, 2015.  Doc. No. 126.  As part of the trial preparation process, the Government filed eleven *in limine* motions, Doc. No. 125, and the grand jury filed a second superseding indictment.  Doc. No. 127.  The second superseding indictment clarified by statutory reference at each count the quantum of drugs attributable to Defendant and his co-defendant Oscar Villafan.  Id.  During the week before the scheduled trial date, the Government filed proposed jury instructions (Doc. No. 129), proposed voir dire (Doc. No. 130), a trial brief (Doc. No. 131), and a proposed special verdict form (Doc. No. 132).  By Thursday, February 19, 2015, counsel Applebaum filed: responses to the Government's *in limine* requests (Doc. No. 133), proposed jury instructions (Doc. No. 134), and a response to the Government's proposed special verdict form (Doc. No. 135).

Following the extensive pre-trial preparation briefly noted above, on Friday, February 20, 2015, the parties were scheduled for a final conference with the Court.  Doc.

2

No. 126.  After a break in those proceedings, and pursuant to the terms of a written plea agreement, Defendant pleaded guilty to Count 1 of the second superseding indictment. Doc. Nos. 138-139.

During the plea hearing, Defendant responded affirmatively to the Court's questions about the plea agreement he had just signed, including whether Defendant: signed it before he read it; read it carefully; read it more than once; talked with Mr. Applebaum about the agreement; asked Mr. Applebaum questions about the agreement and got adequate answers from his counsel; that no one made any threats to get him to plead guilty; and that no one had made any promises to him "other than what might be set forth in the plea agreement itself[.]"  Plea Transcript ("PT"), 4-5.[1]

Defendant similarly acknowledged that he could ask questions of the Court and counsel if he had any concerns or questions during the plea proceeding (PT, 6-7); that he understood each of the provisions within the plea agreement (PT, 7-18); that he would qualify for "safety valve" treatment, but only if he satisfied the criteria established by statute and guideline provision (PT, 11-13); that he was facing guideline ranges of 63-78 months or 97-121 months (PT, 13-14); that he had enough time to talk to his defense counsel (PT, 25-26); that his defense counsel had done a good job of representing him (id.); and that if he pleaded guilty he could not change his mind later (PT, 23-24).

Defendant admitted that he was guilty of Count 1.  PT, 27-28.  Finally, Defendant specifically waived the right to appeal his sentence unless the Court imposed a term of

---

[1] This Court asked Defendant once again whether he had read the plea agreement thoroughly, more than once, and whether Defendant understood the agreement.  See PT, 5-6.

imprisonment greater than 121 months.  See Doc. No. 139, ¶ 11; PT, 16-17, 24.  The Court formally accepted Defendant's guilty plea and made a special finding that the Defendant was guilty and that he knowingly and voluntarily entered into his guilty plea. PT, 8, 26-27.

On June 30, 2014, Defendant appeared for sentencing.  The Court determined that the guidelines range was 78 to 97 months.  See Doc.  No. 161; Sentencing Transcript ("ST") at 6-9.  Before the hearing, the Government argued that Defendant's failure to acknowledge his role in Hermanos Pistoleros Latinos ("HPL"), as described in the Presentence Investigation Report ("PSR"), would factor into the Government's position regarding Defendant's own acceptance of responsibility.  PSR, p. A.1-A.2.  During the hearing, Defendant's counsel confirmed that Defendant withdrew his objection to the PSR's mention of HPL membership, in accordance with Defendant's own prior admissions.  ST, 3-4.

After the Government urged an 88-month disposition, Defendant's counsel argued on Defendant's behalf.  ST, 9-11.  When given the opportunity to address the Court, Defendant stated that he "learned [his] lesson and, you know, there's a lot of people that were affected by my consequences and I take full responsibility."  ST, 11.

The Court imposed a term of 60 months imprisonment, three years of supervised release, and other conditions.  ST, 12-13.  At no time did Defendant state or otherwise indicate he was dissatisfied with his counsel.  At no time did Defendant state or otherwise indicate that he was not being afforded any benefit, either as contemplated within his plea bargain or otherwise.  Defendant asked no questions and made no statements at the June

4

10, 2015, hearing after the Court's sentence was imposed.  Defendant did not file an appeal.

## DEFENDANT'S HABEAS CLAIMS

Defendant timely filed the instant Motion on June 10, 2016.  <u>See</u> Doc. No. 174.  In an accompanying memorandum, <u>see</u> Doc. No. 175, Defendant now generally asserts that Mr. Applebaum provided ineffective assistance during almost all aspects of representing Mr. Castillo.  Defendant's § 2255 memorandum includes a summary paragraph indicative of his more specific complaints, claiming that defense counsel Applebaum:

> [D]id not discharge his duty in accordance with the requirements of the Sixth Amendment and in doing so was deficient and in performance is oxymoronic en extremis. There was no 'performance' by Mr. Applebaum in the instant offense; rather, it should be termed a 'performance,' that is, an orchestrated attempt to obfuscate and conceal his own deficiencies; deficiencies concerning lines of inquiry never explored, and issues of great importance to his client swept aside.

Doc. No. 175 at 8.

As described by the Government, Defendant insists that former trial counsel Paul Applebaum was ineffective throughout the majority of his representation, including deficient performance and Constitutional failures such as: during plea negotiations and in regards to the plea agreement itself (<u>id.</u> at 9-11); regarding legal research and factual investigation of Defendant's case (<u>id.</u> at 10-11, 16-18); that his counsel encouraged an involuntary plea and promised Defendant a particular sentence and other assurances (<u>id.</u> at 13-14, 18); and failed to make certain arguments at sentencing (<u>id</u>. at 14-15). Defendant goes on to demand an evidentiary hearing regarding these claims.  <u>Id.</u> at 19.

On August 8, 2016, the Government responded to each of these claims.  Doc. No. 186.  Defendant in turn submitted a supplemental pleading on November 4, 2016.  Doc. No. 189.  That pleading largely reiterates Defendant's original claims but makes specific allegations against his former counsel and his former counsel's affidavit, to include attaching as a seemingly demonstrative exhibit an order in an unrelated matter from 2011.  Doc. No. 189-1.

## ANALYSIS

### A.    General Principles

To prevail on a motion filed under § 2255, a petitioner must show that his challenge raises a "fundamental defect which results in a complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974).  Section 2255 relief is extraordinary; consequently, it "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice."  United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).  Thus, § 2255 "does not encompass all claimed errors in conviction and sentencing."  Sun Bear v. United States, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quoting United States v. Addonizio, 442 U.S. 178, 185 (1979)).  Rather, it encompasses jurisdictional and constitutional errors.  Id.  Beyond that, its scope is "severely limited."  Id.  "[A] miscarriage of justice cognizable under § 2255 occurs when the sentence is in excess of that authorized by law."  Id. at 706.

An evidentiary hearing on a § 2255 motion must be granted unless the motion, files and records of the case establish conclusively that the petitioner is not entitled to

6

relief.  Kingsberry v. United States, 202 F.3d 1030, 1032 (8th Cir. 2000).  But "[n]o hearing is required where the claim 'is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'"  Watson v. United States, 493 F.3d 960, 963 (8th Cir. 2007) (quoting Shaw v. United States, 24 F.3d 1040, 1043 (8th Cir. 1994).

### B.  Defendant Has Failed to Show that His Defense Counsel Was Ineffective

Defendant claims ineffective assistance because "Mr. Applebaum failed to properly investigate and research his case."  Doc. No. 175, 10. [2]  Continuing, Defendant suggests that instead of conducting proper investigation, his former counsel "seemed like" he "simply wanted him to accept the government's agreement to plead guilty and rushed him into pleading guilty, without knowing the exact consequences for accepting the proposed government's plea agreement."  Id.  As part of this argument, Defendant also claims that by "not properly investigating [his] case, he [Applebaum] simply agreed to everything the government stipulated in the plea agreement, which at the end it [sic] harmed him because he had to debrief twice in order to qualify for the 'safety valve.'" Id., 11. Defendant also argues that his former counsel failed to provide him with discovery; failed to provide or "go over" his pretrial motions admittedly filed on his behalf; or otherwise "show him what evidence the government had against him[.]"  Id., 11.

---

[2] Because the majority of Defendant's supplementary materials merely reiterate his original claims, and for reasons described herein, the Court in this Order need only cite the original *habeas* pleading, and only turns to his supplementary materials in certain circumstances.

Ostensibly, and as part of his argument that Mr. Applebaum did no research, Defendant also argues that he was lured into pleading guilty by certain assurances purportedly made by his lawyer, including that: "(1) he would get a sentence lower than 5 years" because of the safety valve; "(2) that he would be placed in a federal prison camp"[;] and (3) that by pleading guilty Immigration would not place an immigration hold on him.  Id.

Continuing with the theme of failed investigation or research, Defendant also claims that Mr. Applebaum did not go over the PSR with him, and that Mr. Applebaum failed to object to the mention of his HPL membership in the PSR – thereby impacting his status with the Bureau of Prisons.  Id., 12.  Defendant argues as well that Mr. Applebaum failed to conduct interviews, to obtain materials regarding confidential sources, and "to investigate what immigration consequences he would have if [sic] signed the plea agreement[.]"  Id., 17.

The record conclusively establishes that Defendant is not entitled to relief on this claim (or claims).  First, while couched as a failure to investigate, Defendant's arguments touch upon all aspects of Mr. Applebaum's representation.  In order to prevail, he must show that his "'attorney's performance fell below a professional objective standard of reasonableness' and that [he] 'was prejudiced.'"  Calkins v. United States, 795 F.3d 896, 897 (8th Cir. 2015) (quoting Etheridge v. United States, 241 F.3d 619, 622 (8th Cir. 2001) (citing Strickland v. Washington, 466 U.S. 668 (1984))).  Furthermore, courts "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' and when 'determining whether counsel's

representation was deficient, a court must avoid second guessing trial strategy.'" Calkins, 795 F.3d at 897 (quoting Johnson v. United States, 278 F.3d 839, 842 (8th Cir. 2002)). Furthermore, under the first prong of the Strickland test, courts consider counsel's performance objectively, and assess whether it was reasonable "under prevailing professional norms" and "considering all the circumstances." Fields v. United States, 201 F.3d 1025, 1027 (8th Cir. 2000) (citations omitted). Meanwhile, Defendant demonstrates neither objectively unreasonable performance nor prejudice.

Regarding access to materials specifically, and Mr. Applebaum's representation generally, the Court references Defendant's plea colloquy during the February 20, 2015, proceedings, during which Defendant readily acknowledged his access to Mr. Applebaum, access to the evidence produced by the Government for trial, and clear satisfaction with Mr. Applebaum's assistance overall:

> THE COURT: Do either counsel have anything you would like to ask of the defendant? Mr. Applebaum?
>
> BY MR. APPLEBAUM:
>
> Q. Mr. Castillo I've been representing you since June or July of 2014, correct?
>
> A. Yes, sir.
>
> Q. During that time, you and I, by my calculations, have met at least a dozen times face to face, true?
>
> A. True.

Q. And we've talked on the phone maybe 50 times about your case, correct?

A. Yes.

Q. And it's also true that you came to my office and spent hours and hours with me and even by yourself going through the discovery in this case, correct?

A. Correct.

Q. And then this plea is sort of a late developing plea, but you've had plenty of time both today and last night to discuss the plea agreement that's been offered to us, correct?

A. Correct.

Q. And earlier this morning, I read literally every word in the plea agreement to you, correct?

A. Correct.

Q. And then you read it yourself as well?

A. Yes, sir.

Q. Did I say anything different to you while we met about your case and your plea than has been said in court today?

A. No, sir.

Q. And are you satisfied about the way that I've represented you?

A. I'm very satisfied.

PT, 25-26.

The Court agrees with the Government's contention that Defendant's own plea hearing testimony belies any claim that he wasn't afforded ample opportunity to review materials, or that his counsel failed to effectively communicate with him about his case. To the contrary, Defendant acknowledged that Mr. Applebaum had been capably working for him and his interests – in part by their many meetings, discovery review, and trial preparation – and that he was "very satisfied."  PT, 26.  Furthermore, the record is reinforced by Mr. Applebaum's affidavit (Doc. No. 186, Att. 1 ("Apple. Aff."), ¶¶ 10-11), in which Mr. Applebaum describes Defendant's insufficient access to case materials as "complete and utter falsity" and a "lie."[3]  Former counsel goes into extensive detail describing the actual facts regarding that issue (access), but also the attorney-client relationship generally.   See, generally, Apple. Aff.   No facts provided within Mr. Applebaum's affidavit counsel a finding of less than objectively reasonable legal assistance.   To the contrary, they well-demonstrate that Defendant was properly represented.

The record similarly belies each of Defendant's remaining arguments as to his former counsel's investigation, research, or a purported lack thereof.  First, Defendant made clear during his plea that he understood the impact of his plea agreement, contrary to his argument that more legal assistance would have stopped him from "simply" agreeing "without knowing the exact consequences[.]"  Defendant similarly agreed that

---

[3] Mr. Applebaum's affidavit begins by informing this Court that "as a preliminary matter I must advise the Court that the entirety of Defendant's factual allegations in his pleading is a rank falsehood."  See Apple. Aff., ¶ 4.

he had been promised nothing outside of the plea agreement, the opposite of his present claims that his lawyer promised him:  a sentence lower than 5 years; prison camp; and that no immigration hold would occur.  PT, 4-5, 18, 27.  In fact, the agreement instead specifically addressed how no one (including the Court, the Government, or his counsel) could predict with any certainty the immigration consequences after his plea drug conspiracy, and Defendant acknowledged that circumstance.   Doc. No. 139, ¶ 10.  Defendant also acknowledged this circumstance during his plea.  PT, 15-16. This record evidence demonstrates that Defendant's arguments are disingenuous.

Defendant also challenges his former counsel's efforts after his plea.  Defendant seemingly argues that but for his lawyer's lack of guidance, he would not have agreed to plea terms, and that in doing so he was somehow harmed because he had to debrief on two occasions in order to qualify for safety valve treatment.  Doc. No. 175, ¶ 11.  First, this Court during the plea hearing specifically apprised Defendant of what was necessary for Defendant to achieve safety valve relief; informed Defendant of the significant difference that would occur if Defendant did not satisfy the safety valve; and made clear Defendant understood the gravity of the plea agreement's safety valve provision.  See PT, 12-13; Doc. No. 139, ¶ 6.e.  Defendant confirmed he understood these considerations and was still willing to plead guilty.  PT, 11-14.

Regarding Defendant's "two proffers" complaint, the evidence demonstrates that after his guilty plea Defendant agreed to an initial proffer session on April 21, 2015.  Afterward, the Government explained its concerns by written letter, as Defendant was not truthful.  See April 22, 2015, correspondence from AUSA Allen Slaughter to Paul

12

Applebaum, Esq. (Attachment B). Later, in an effort to help his client obtain the safety valve benefit, Mr. Applebaum approached the Government again, in hopes of affording Defendant another proffer attempt. Apple. Aff., ¶ 18. Defendant later returned for a second session, during which he discussed the relevant facts sufficiently to warrant safety valve treatment. Id. Therefore, Defendant ultimately received the benefit of safety valve treatment, albeit with some difficulty that was of his own making. Any perceived harm he endured by proffering a second time was of his own accord – not because his counsel performed below an objectively reasonable standard. To the contrary, his attorney endeavored to insure Defendant was not subject to a ten-year mandatory minimum sentence. [4]

Defendant also claims that Mr. Applebaum did not go through the PSR with him, but then claims that Mr. Applebaum ignored his request to object to a specific PSR fact regarding his membership in Hermanos Pistoleros Latinos ("HPL"). First, the opposing and dual nature of Defendant's PSR arguments well-demonstrate that Mr. Applebaum did go through the PSR with Defendant. This is confirmed by Mr. Applebaum, who stated:

> Defendant claims I did not go over the PSR with him. That is a lie. How would I know which objections Castillo had if we hadn't gone over it together.

Apple. Aff., ¶ 21.

---

[4] Defendant submits as "Exhibit A" copies of text messages to demonstrate in part his claim that Mr. Applebaum was ineffective. To the contrary, these messages confirm Mr. Applebaum's representations regarding the safety valve issue and that he was working diligently for defendant. See Doc. No. 189-1, pp. 1-3.

Second, Mr. Applebaum did in fact object in the first instance to the PSR's discussion of Defendant's HPL membership.  See PSR, p. A.1-A.2; Apple. Aff., ¶ 22. But because of its importance for purposes of the Court's understanding of Defendant's role, and because gang membership and/or association is important from a BOP safety perspective, the Government responded in turn.  PSR, p. A.1-A.2; Apple. Aff., ¶ 22.  The evidence well-demonstrated Defendant was a HPL lieutenant.  Apple. Aff., ¶ 22.  The Government indicated it would prove this issue at sentencing, if necessary, and also would argue that Defendant's denial of his gang membership should impact his acceptance of responsibility reduction.  PSR, p. A.1-A.2.  Defense counsel's decision to withdraw the objection, strategic or otherwise, was clearly made to avoid needless litigation and to diminish Defendant's sentencing exposure.  Apple. Aff. ¶ 22.

Defendant makes a number of claims in his Motion which his former counsel maintains simply are not true.  Counsel Applebaum did not promise Defendant he would get a sentence lower than 5 years.  Apple. Aff. ¶¶ 19-23.  Counsel Applebaum did not promise Defendant that he would get placement at a federal prison camp.  Id.  Similarly, Counsel Applebaum did not promise Defendant that if he pleaded guilty the Bureau of Immigration and Customs Enforcement would not place a hold on him.  Id.  Moreover, Counsel Applebaum specifically acknowledged to Defendant that if he pleaded guilty there could be Immigration consequences, and this fact was addressed (and Defendant acknowledged the same) during his plea hearing.  Id.; PT, 15-16; Doc. No. 139, ¶ 10.

Upon review of this evidence, this Court agrees with Mr. Applebaum's description of Defendant's initial § 2255 pleading:

> Simply put, Mr. Castillo's Petition is a boilerplate pleading that circulates through every prison facility, allowing inmates to mollify their families and shift the focus from their misconduct and blame their attorneys for their predicament. After all, it's much easier to blame your lawyer, the prosecutor, or the judge than it is to look your wife and children in the eye and know that you've destroyed your family.

Apple. Aff. ¶ 27.

Defendant's pleading contains no evidence that he gave counsel information which would have, or should have, led Mr. Applebaum to conclude "that further investigation was necessary." <u>Cox v. Wyrick</u>, 642 F.2d 222, 226 (8th Cir. 1981).  More generally, Defendant's § 2255 pleading contains no substantiated evidence that his former lawyer made him promises, threatened him, did not give him access to counsel, or otherwise failed him.  In point of fact, Mr. Applbebaum's affidavit demonstrates that the contrary occurred.

As discussed, there "is a 'strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance.'" <u>United States v. Luke</u>, 686 F.3d 600, 604 (8th Cir. 2012) (quoting <u>Strickland</u>, 466 U.S. at 689).  Defendant has failed to demonstrate any constitutional harm.  Moreover, Defendant has failed to demonstrate any reasonable probability that the result of his matter would have been different.  <u>See, e.g.</u>, <u>United States v. Arroyo</u>, No. 8:14CR357, 2016 WL 3365392, at *2 (D. Neb. June 16, 2016), <u>judgment entered,</u> No. 8:14CR357, 2016 WL 3365687 (D. Neb. June 16, 2016). [5]

---

[5] Defendant's inclusion of "Exhibit C" in his supplemental materials, namely an order regarding a matter involving Mr. Applebaum from the fall of 2011, does not alter this Court's analysis. <u>See</u> Doc. No. 189-1, p. 9.  As described above, review of the facts before the Court in the instant matter well demonstrate that Mr. Applebaum was not ineffective.  Defendant cannot

**B.   Defendant Has Failed to Show that His Plea Was Not Voluntary.**

Defendant also claims that his plea was involuntary, focusing again on the fact that he was not granted access to discovery and not fully informed regarding "all the consequences that came with pleading guilty[.]"  Doc. No. 175, 13.  Defendant maintains that, without some undefined additional amount or type of counsel, and because he "was not allowed to see or read what evidence the government had against him[,]" his plea was not knowing, willing, or intelligent.  Id.

Defendant's own colloquy with his counsel during plea proceedings belies this claim. PT, 25-26.  Defendant fully understood the nature and circumstances of his plea of guilty and, as this Court concluded, he voluntarily entered into his guilty plea.  See PT, 4, 8, 17 and 26.  Prior to accepting his guilty plea, this Court instructed the Government's attorney to describe the written plea agreement to the Defendant, which occurred, and during which Defendant indicated his understanding of the agreement's terms.  PT, 5-20.  Afterward, this Court described Defendant's rights if he persisted in a plea of not guilty, and the legal consequences of his decision to plead guilty.  PT, 20-23.  Defendant specifically acknowledged, among other things, that he was facing two potential ranges (PT, 13-14) as well as a mandatory statutory sentence unless he was safety valve eligible (PT, 14); that he had to satisfy certain conditions before he would be safety valve eligible (PT, 11-13); that his defense counsel had done a good job of representing him (PT, 25-26); that no one threatened him or put any pressure on him to plead guilty (PT, 4-5, 27);

---

legitimately show a constitutional harm and similarly cannot show by any reasonable probability that his circumstances would have been different.

that no one made any promises to him other than what was contained in the plea agreement (PT, 4-5, 18, 27); and that if he pleaded guilty he could not change his mind later (PT, 5-6, 23-24).   Defendant also acknowledged that he was guilty of Count 1 (PT, 27-28).   The transcript well-demonstrates that Defendant's plea was knowing and voluntary.

That record is once again reinforced by Mr. Applebaum's affidavit, who reiterates that Defendant "was not threatened or forced to plead guilty" while describing the various preparations he as Defendant's lawyer went through to prepare for trial.   Apple. Aff., ¶ 28.   When combined with the aforementioned plea hearing and sentencing hearing transcripts, it is clear that Defendant's involuntary plea claims lack merit. Mr. Applebaum's affidavit again identifies various facts contrary to those alleged in Defendant's § 2255 pleading.   In short, Defendant's self-serving pleading has no support in the record and does nothing to cast any doubt on the effective assistance of counsel or on the Court's finding that his guilty plea was knowingly and voluntarily made.

**DEFENDANT IS NOT ENTITLED TO AN EVIDENTIARY HEARING**

"A prisoner is entitled to an evidentiary hearing on a section 2255 motion unless the motion, files, and record of the case conclusively show that the prisoner is not entitled to relief."   Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995). "Accordingly, a petition can be dismissed without a hearing if 1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or 2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."   Id.

The latter consideration is clearly the case here.  Defendant Castillo's allegations are both incredible and contradicted by the record, including materials Defendant supplemented into the record.  His original habeas pleading and supplemental materials – which he submitted after his former counsel provided a detailed affidavit – appear to be rife with falsity and/or contrary to known circumstance.  Considering the aforementioned hearing transcripts, complemented by the submission from his former counsel, the record shows that Defendant is clearly not entitled to any relief.  Defendant's Motion is clearly without merit.

**NO CERTIFICATE OF APPEALABILITY WILL BE GRANTED**

Although the Court does not anticipate that Defendant will seek Eighth Circuit review of this Order, this Court today makes clear that a federal prisoner may not appeal a final order in a proceeding under 28 U.S.C. § 2255 without first securing a certificate of appealability.  28 U.S.C. § 2253(c)(1)(B). A district court cannot grant a certificate of appealability unless the prisoner "has made a *substantial showing* of the denial of a constitutional right."  Id. at § 2253(c)(2) (emphasis added); accord Williams v. United States, 452 F.3d 1009, 1014 (8th Cir. 2006).  Furthermore, a certificate of appealability will not be granted simply because an appeal is pursued in good faith and raises a non-frivolous issue.  See Kramer v. Kemna, 21 F.3d 305, 307 (8th Cir. 1994) ("Good faith and lack of frivolousness, without more, do not serve as sufficient bases for issuance of a certificate under 28 U.S.C. § 2253.").  Rather, a prisoner must satisfy a higher standard; he must show that the issues to be raised on appeal are "debatable among reasonable jurists," that different courts "could resolve the issues differently," or that the issues

otherwise "deserve further proceedings." Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997); accord Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994). Defendant has made no such showing here.

Therefore, the Court concludes that a certificate of appealability would not be appropriate. Defendant's claims have been fully addressed herein and they lack merit. His claims are not "debatable among reasonable jurists." Cox, 133 F.3d at 568. Nor has he shown sufficient reason to believe that any other court – including the Eighth Circuit – would decide his claims any differently than decided here. He has not identified, and the Court cannot independently discern, anything novel, noteworthy or worrisome about his case warranting appellate review. Thus, the Court concludes that Defendant is not entitled to a certificate of appealability.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED**:

1.  Defendant Raul Villafan Castillo's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. No. 174) is **DENIED**; and

2.  The Court declines to issue a Certificate of Appealability should Defendant attempt to appeal this Order to the Eighth Circuit.

**LET JUDGMENT BE ENTERED ACCORDINGLY** in Civil No. 16-1944.

Dated:  December 13, 2016

_____
RICHARD H. KYLE
United States District Judge